IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| **ERICA L. HENRY,** | ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| v. | ) Judge |
| | ) Magistrate Judge |
| **ROYAL OAK ENTERPRISES, LLC,** | ) |
| | ) Jury Demand |
| Defendant. | ) |

## COMPLAINT

For her Complaint against Defendant Royal Oak Enterprises, LLC ("Defendant"), Plaintiff Erica L. Henry ("Ms. Henry") states:

### PARTIES

1. Ms. Henry is a citizen and resident of Crossville, Tennessee, and a former employee of Defendant.

2. Defendant is a Delaware limited liability company with its principal place of business at 1 Royal Oak Avenue, Roswell, Georgia 30076-7583. Defendant may be served with process through its registered agent, Mike Juliano, 13870 Highway 70 North, Monterey, Tennessee 38574.

### JURISDICTION AND VENUE

3. This is an action for equitable relief and damages for unlawful employment practices brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

4. Ms. Henry has met all conditions precedent to the filing of this Complaint. She timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 24, 2021. The EEOC mailed her a Notice of Right to Sue on August 5, 2021.

**FACTS**

5. Ms. Henry worked for Defendant from July 2016 until it discharged her on September 15, 2020.

6. Throughout her employment, Defendant discriminated against Ms. Henry in the terms, conditions, and privileges of employment and subjected her to disparate treatment because of her sex.

7. For example, Ms. Henry was passed over for promotion to line leader positions four times and to supervisor positions three times. She was eventually promoted to line leader by a former supervisor, Steve Fouch, when her supervisor, Jeff Taylor, refused to promote her because of sex, but was never promoted to a supervisor position, despite her superior qualifications, seniority, and work experience, because of her sex.

8. Indeed, less qualified, less senior, and less experienced males, including Jason Rogers, Robert Garay, Daniel Burton, Ricky Walker, and David Payne, some of whom had extensive and serious criminal histories and backgrounds, received the job positions Ms. Henry applied for and in which Defendant knew she was interested.

9. Additionally, supervisor Jeff Taylor refused to assist Ms. Henry in obtaining her forklift operator's license. Eventually, Ricky Walker trained and observed her so that she could obtain the license.

10. Further, Ms. Henry and other female employees, including Heather Pugh, were repeatedly denied "top out pay" in their line leader positions. Male employees, however, received their top out pay within 90 days. It took Ms. Henry over a year to receive her top out pay, and Ms. Pugh never received hers.

11. Additionally, after Ms. Pugh became pregnant, Jeff Taylor removed her from her line leader position and gave it to Harlan Phillips, who had to have Ms. Pugh show him how to do the job. Ms. Pugh left her employment with Defendant due to Taylor's sex-based discriminatory treatment and harassment.

12. Further, Ms. Henry's supervisor, Jeff Taylor, repeatedly made sex-based discriminatory insults and comments to and about Ms. Henry and other women and subjected them to disparate treatment compared to similarly situated male employees.

13. For example, Taylor stated that "women cannot use stools" at work and took away female employees' stools and gave them to male employees. Taylor refused to allow Ms. Henry to run a sweeper and stated, "Women can't run it." Taylor further made Ms. Henry and other women clean up messes in the plant while allowing male employees to sit and watch them do so. Taylor refused to give Ms. Henry and other female employees required "heat breaks" when working around hot equipment and in the hot and humid environment in the plant, while allowing male employees to take such breaks. Taylor made Ms. Henry wear an orange vest over her shirt at work but did not require male line leaders to do so.

14. Moreover, during her employment Ms. Henry was subjected to continuous, severe and pervasive, unwelcome and offensive, sex-based discriminatory harassment, intimidation, ridicule, insult, and abuse to which male employees were not subjected by supervisor Jeff Taylor, supervisor David Payne, and maintenance employee Mike Winn.

15. For example, Payne and Winn repeatedly called Ms. Henry "DBB" and "BDB" and wrote those letters in locations throughout the plant, which Ms. Henry has photographs of. They told her and others that these acronyms stood for "Dumb Blonde Bitch" and "Blonde Dumb Bitch" and stated that they were referring to Ms. Henry.

16. In July 2020, Taylor hit Ms. Henry's breast and stated, "There ain't no sag in those." Other employees, including Charley Wiedman and Luben Lakins, observed this and reported it to Defendant's management and Human Resources ("HR") representatives.

17. Taylor and Winn continuously yelled and cursed at Ms. Henry; mocked, belittled, and intimidated her; constantly called her a "bitch" at work; and made statements such as, "I can't believe they let that stupid bitch answer phone calls" in the workplace.

18. Winn further threw a shovel in Ms. Henry's vicinity, screamed at and threatened her, and stated that he would "have [her] job."

19. Taylor, Payne, and Winn did not treat male employees in this manner. Taylor further stated that "if it were up to [him], there would not be any women working here," further demonstrating sex-based discriminatory animus.

20. Many employee witnesses observed the above-described discriminatory, hostile, and abusive treatment of Ms. Henry and other women and reported it to their supervisors and to former Plant Manager Mike Simonic.

21. Ms. Henry opposed the sex discrimination and harassment she experienced to the supervisors engaging in it and told them stop, to no avail. She further reported it to HR representatives Jerri Mitchell and Buffi Ledbetter, to former Plant Manager Reggie Mims, and to Maintenance Supervisor Rick Evans, also to no avail.

4

22. On June 26, 2020, Mr. Simonic asked Ms. Henry "what he should do" about Winn's ongoing discriminatory harassment and abuse of her. Ms. Henry advised him that she believed Winn should be discharged based on his conduct. Neither Simonic nor Defendant took any preventive, corrective, or remedial action in response to her complaints, despite their obligations to do so. Instead, Defendant retaliated against Ms. Henry.

23. After she reported their discriminatory harassment and abuse of her, Taylor, Payne, and Winn, retaliated against Ms. Henry and took steps to sabotage her work and the machines she worked on, and to not properly repair the machines, in an effort to prevent her from meeting production goals and to get her fired.

24. On June 30, 2020, Taylor, Payne, and Simonic insisted on meeting with Ms. Henry but would not allow her requested witness, Luben Lakins, to attend the meeting with her and made Mr. Lakens leave.

25. In the June 30, 2020, meeting, Simonic suspended Ms. Henry, without pay, for three days for an alleged lock-out/tag-out violation on a baler that had allegedly occurred a week earlier, on June 23, 2020.

26. Ms. Henry disputed the alleged violation and further advised Simonic that she had been running the baler exactly how she had been trained to run it by line leaders Cody Dishman and Tony Watson. She had never been trained to perform the work in any other manner. The only formal "training" Defendant administered was showing a video and having employees sign paperwork indicating that they had had training. Further, Ms. Henry's supervisors had watched her perform the work the same way many times but had never stated that she was doing anything incorrectly or improperly.

27. Moreover, Defendant knew that the "Line 3" equipment that it was having Ms. Henry run was not in compliance with applicable codes, rules, and regulations, yet it had her running it anyway. Defendant knew that Jeff Taylor had struck the machines/baler Ms. Henry worked on with a forklift and that witnesses had seen him do so. It failed and refused to drug test Taylor as required and in accordance with normal policy and practice. Other employees straightened and attempted to repair machine parts that Taylor had damaged and broken. They placed the speed box for the machine inside its doors rather than on the outside where it could be adjusted, like on Lines 1 and 2. The dust ventilation system still did not work properly. The damaged machine would barely run yet Defendant required Ms. Henry to continue running production on substandard equipment that it knew was not in compliance with applicable codes, rules, and regulations. Ms. Henry reported her concerns about the equipment to Defendant. Defendant should have shut down Line 3 and replaced the defective equipment. Instead the machines it had Ms. Henry running remained substandard and out of compliance up through the time of her discharge on September 15, 2020.

28. Unlike they did for male line leaders who repeatedly committed the same, similar, and worse alleged infractions, Simonic and Taylor did not follow Defendant's progressive discipline policy with respect to Ms. Henry. Rather, they skipped the coaching, verbal warning, and written warning steps and suspended her, without pay, for three days on June 30, 2020. They were required by company policy to obtain approval from Defendant's corporate office before taking that adverse action but did not do so.

29. Ms. Henry disputed that she had committed the alleged June 23, 2020, infraction, disagreed with the suspension, and refused to sign the Disciplinary Action Report that Taylor and Simonic prepared in conjunction with the discriminatory and retaliatory suspension.

6
Case 2:21-cv-00043   Document 1   Filed 11/03/21   Page 6 of 11 PageID #: 6

30. Further, even though Simonic had repeatedly and openly admonished Ms. Henry and other employees "not to report anything" to corporate HR, when her discrimination complaints fell on deaf ears and she was retaliated against for making them, Ms. Henry requested a meeting with corporate HR and a complaint form, and told Simonic that she wanted to make a formal complaint of sex discrimination, harassment, and retaliation.

31. Just as he did with other employees, Simonic told Ms. Henry that he had no complaint form that she could fill out. This was an effort to deter and dissuade Ms. Henry from making a discrimination complaint to corporate HR.

32. Ms. Henry responded to Simonic that she would write a statement for him to provide to corporate HR. She then went into a conference room, wrote a statement, made a copy for herself, and gave the original to Simonic.

33. Ms. Henry followed up on her June 30, 2020, statement with a written, "Formal Complaint" of sex discrimination, harassment, and retaliation dated July 2, 2020, which she (a) read to corporate HR Generalist Joanne Milam and to Simonic's then-supervisor, Director Evan Bryant, over the phone in July 2020 and (b) provided to Ms. Milam when she came to the plant in July 2020.

34. Ms. Henry further reported her concerns of sex discrimination, harassment, and retaliation to a local attorney in Crossville, Tennessee, in July 2020, which Ms. Milam and Defendant knew about.

35. On July 9, 2020, Ms. Henry, Mr. Lakins, and other employees observed Simonic and others loading large boxes of paperwork from Simonic's office onto a pallet and a forklift and then dumping them into a trash compactor outside the plant.

36. On July 15 and 28, 2020, Ms. Henry further reported the sex discrimination and harassment and retaliation that she had experienced, orally and in writing, to corporate HR Generalist Milam, Director Bryant, Director Johnny Godley, and to a local attorney, and identified witnesses to the discrimination, harassment, and retaliation.

37. Defendant refused to allow Ms. Henry to record the July 2020 meetings. Ms. Henry asked to reschedule so that her local attorney could be present. Defendant knew she had reported her concerns of sex discrimination, harassment, and retaliation to an attorney.

38. Defendant failed and refused to take any preventative, corrective or remedial action in response to Ms. Henry's discrimination complaints. Its response to her complaints manifested indifference or unreasonableness in light of what it knew or reasonably should have known. Its alleged investigation of her complaints was a sham. Witnesses confirm that it did not ask them about the sex discrimination, harassment, or retaliation at issue but attempted to gather information that it could use against Ms. Henry instead.

39. In the July 28, 2020, meeting, in direct response to Ms. Henry's reported concerns of sex discrimination, Mr. Godley told her that she "could be discharged if she continued documenting and reporting" the discriminatory conduct. Upon information and belief, witnesses other than Milam, including Charlie Wiedman, heard Godley make this intimidating, threatening, and retaliatory admonition designed to deter and dissuade Ms. Henry from reporting discrimination.

40. Less than two months later, on September 15, 2020, Defendant discharged Ms. Henry for a second alleged lock-out/tag-out violation that had allegedly occurred six days earlier, on September 9, 2020, and despite its knowledge of the damaged and defective, substandard and out of compliance machines on which it had her working.

41. Ms. Henry disputed that the September 9, 2020, violation occurred as described and refused to sign the Disciplinary Action Report Defendant created.

42. Defendant's stated reason for discharging Ms. Henry was a pretext for sex discrimination and/or retaliation. Defendants discharged Ms. Henry because of sex and/or because of her opposition to and complaints of sex discrimination and/or her participation in its alleged investigation of her complaints.

43. Numerous male employees repeatedly committed lock-out/tag-out and other safety violations but were not discharged, including but not limited to Zach Silcox, Robert Garay, Wayne Nichols, Daniel Burton, Lynard Cravens, Andy Hodgin, and Tony Watson. These employees reached into baggers, balers, and sewing machines without locking out the equipment. Garay had two safety violations within a 12-month period but was not discharged. Supervisors, including Taylor and Payne, repeatedly observed their violations. Ms. Henry and other employees, including Mr. Wiedman and Mr. Lakins, reported their violations to Taylor, Payne, Simonic, and Safety Director David Parker, among other managers. Some of the male employees were disciplined but none were discharged for their safety and rules violations.

44. Other male employees committed worse infractions than those Defendant claims Ms. Henry had and were not discharged. For example, Payne allowed Tyler Burt to continue working in the plant when he knew Burt was under the influence of alcohol and/or drugs. Ms. Henry and other employees reported this safety hazard to Payne and Taylor, who did nothing in response. It was also common knowledge that Taylor was abusing pain pills and asking employees to provide him pills; this, too, was observed and reported to Defendant by Lorne Koch, David Henderson, Allen Bohannon and others, including in July 2020. Other employees were consuming alcohol and using drugs on their breaks while at work, including Payne, who

9

Case 2:21-cv-00043   Document 1   Filed 11/03/21   Page 9 of 11 PageID #: 9

attempted to get Ms. Henry to consume alcohol in his and Taylor's office, which she declined to do. Additionally, Robby Jordan struck two rows of lighter fluid with a forklift, causing a massive and dangerous spill on the plant floor. Ms. Henry and Ms. Pugh were forced to clean up his mess with no Personal Protection Equipment. They reported all of this to Simonic, who did nothing in response.

45. As described above, Defendant discriminated against Ms. Henry in the terms, conditions, and privileges of employment, subjected her to disparate treatment, and discharged her because of sex, in violation of Title VII and the THRA.

46. As described above, Defendant created, allowed, maintained, and failed to remedy a sexually hostile, abusive, and intimidating work environment that altered the conditions of Ms. Henry's employment and made it more difficult for her to perform her job, in violation of Title VII and the THRA.

47. As described above, Defendant retaliated against Ms. Henry for opposing and reporting sex discrimination and harassment and/or for participating in Defendant's alleged investigation of her discrimination complaints, in violation of Title VII and the THRA.

48. Defendant's conduct as described in this Complaint was malicious and/or recklessly indifferent to Ms. Henry's federally protected rights, entitling her to punitive damages.

49. As a direct result of Defendant's discriminatory and retaliatory conduct, Ms. Henry has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and mental anguish, undue stress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

## RELIEF REQUESTED

WHEREFORE, Ms. Henry respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment, humiliation, emotional distress and mental anguish, undue stress and anxiety, inconvenience, and loss of enjoyment of life;

4. Front pay and damages for lost benefits;

5. Punitive damages under Title VII;

6. Attorneys' fees, costs and litigation expenses;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
Law Office of Douglas B. Janney III
2021 Richard Jones Road, Suite 310A
Nashville, Tennessee 37215
(615) 742-5900
doug@janneylaw.com

*Attorney for Plaintiff*